SIGNED this 21st day of September, 2012

_____
Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re | |
| RICHARD RYAN HUNTER, | No. 11-51343 |
| Debtor. | Chapter 7 |
| DAVID DEAN and LISA DEAN, | |
| Plaintiffs, | |
| vs. | Adv. Pro. No. 11-5051 |
| RICHARD RYAN HUNTER, | |
| Defendant. | |

**M E M O R A N D U M**

Appearances:

Joseph B. Lyle, Esq.  
Post Office Box 274  
Bristol, Tennessee 37621  
*Attorney for David and Lisa Dean*

Douglas L. Payne, Esq.  
401 West Irish Street  
Greeneville, Tennessee 37743  
*Attorney for Richard Ryan Hunter*

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.**  In this adversary proceeding, the plaintiffs David and Lisa Dean seek a determination that the state court default judgment they hold against the debtor Richard Ryan Hunter in the amount of $147,000 for compensatory damages and $100,000 in punitive damages is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).  Presently before the court is the Plaintiffs' motion for partial summary judgment.  They contend that pursuant to the doctrine of collateral estoppel $10,000 of the compensatory damages and all of the punitive damages are excepted from discharge under § 523(a)(4) and (a)(6) as a matter of law.  For the reasons discussed below, the court concludes that $110,000 of the Plaintiffs' judgment is nondischargeable under § 523(a)(4).  This is a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(I).

I.

On June 1, 2011, the Debtor filed a voluntary petition for chapter 7 bankruptcy relief. On September 6, 2011, the Plaintiffs initiated the present adversary proceeding, seeking a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) for fraud, § 523(a)(4) for embezzlement or larceny, and § 523(a)(6) for willful and malicious injury to property.  The Plaintiffs' claims against the Debtor arise out of a contract dated September 20, 2007, between them and the Debtor and/or his company, The Hunter Company of Southwest Virginia, Ltd. ("Hunter Company"), for the construction of a residence for the Plaintiffs in Bristol, Virginia.[1]  At some point after construction began numerous issues arose about its quality and uncompleted components such that the parties entered into a subsequent contract regarding remedial work.[2]  On February 19, 2010, the Plaintiffs sued the Debtor and Hunter Company in the Circuit Court for Bristol, Virginia, asserting claims for breach of contract, breach of warranty, negligence, and conversion.  The conversion claim was based on the allegation that the Debtor and his company knowingly and intentionally converted and used building materials from Plaintiffs' residence in other construction projects without giving proper credit, with the conversion therefore "amount[ing] to theft."  The state court complaint sought

---

[1] The contract has not been made a part of the record.  The Debtor states in his answer that he executed the contract on behalf of the Hunter Company, but the state court entered the default judgment against both the Hunter Company and the Debtor personally.

[2] Similarly, this second contract was not made part of the record.

$150,000 in compensatory damages for all claims and $100,000 "as punitive damages for the conversion of the Plaintiffs' property."

The Debtor and Hunter Company were served with process in the state court action, but neither filed an answer or responsive pleading.  As a result, the Plaintiffs moved for default judgment, which was scheduled for an October 18, 2010 hearing.  The Debtor did not appear at the hearing, and that same day the state court entered an order of default against both the Debtor and Hunter Company.[3]  On March 25, 2011, the state court held an evidentiary hearing on the issue of damages.  Again, the Debtor did not appear, but the court heard evidence from Mr. Dean and from an expert witness, Joe Mitchell, and accepted documentary evidence submitted by the Plaintiffs' attorney.  Following the hearing, the state court entered a final order on May 31, 2011, stating that the defendants "breached both contracts, defrauded the plaintiff's [sic] on both contracts, and converted property of the plaintiff's [sic] on the first contract."  The May 31, 2011 order also recited that "[t]he Court found the total damages due and owing to the plaintiff[s] as $147,000.00 in compensatory damages and $100,000.00 in punitive damages for the defendants' fraud on both contracts and conversion on the first contract.  The total damages are $247,000.00."

As the foregoing quoted language demonstrates, the final order set forth an express finding of breach of contract, fraud, and conversion, but did not specify a damage amount for each claim.  Instead, the order simply set forth a total compensatory damages award and a total punitive damages award for "the defendants' fraud on both contracts and conversion on the first contract."  However, fraud was not a basis for relief in the state court complaint and the Plaintiffs had requested punitive damages only for their conversion claim.

In the motion for partial summary judgment that is presently before the court, the Plaintiffs assert that $10,000 of the compensatory damages award and all of the $100,000 punitive damages are attributable to their conversion claim, and that pursuant to the principle of collateral estoppel these amounts are nondischargeable as a matter of law as larceny or embezzlement under § 523(a)(4) and/or willful and malicious injury to property under § 523(a)(6).  In support of their motion, the Plaintiffs have submitted the affidavits of Mr. Dean and the Plaintiffs' state court attorney, Michael

---

[3] This order of default was not made a part of the record.

3

Bishop, along with handwritten notes that are the "State Court's two page record of [the March 25, 2011 hearing] that is part of the State Court's file." According to the affidavits and the Plaintiffs, the handwritten notes establish that the $147,000 compensatory damages award was comprised of a $10,000 conversion or "theft" loss and $137,000 for diminution in value of the Plaintiffs' residence.

The Debtor opposes the motion for partial summary judgment, asserting that disputed issues of material fact remain. The Debtor does not deny that the two pages of handwritten notes are the state court's notes from the March 25, 2011 hearing on damages, or that $137,000 of the compensatory damages award was for diminution in value of the Plaintiffs' property. The Debtor concedes that the notes reflect $10,000 for "theft loss," but argues that it is unclear whether the court was jotting down a statement from a witness, argument of counsel, or the court's own conclusion. As to the Plaintiffs' contention that the entire punitive damages award was for their conversion claim, the Debtor observes that the May 31, 2011 order does not state this, but concedes that the complaint only sought punitive damages for the conversion claim. Lastly, the Debtor denies that the judgment establishes the elements of nondischargeability under either § 523(a)(4) or (6).

II.

"The doctrine of collateral estoppel 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999) (citing, *inter alia*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n.23 (1979) ("The whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed.")). As explained by the Sixth Circuit Court of Appeals in concluding that collateral estoppel applies in bankruptcy dischargeability determinations,"[t]hat Congress intended the bankruptcy court to determine the final result dischargeability or not does not require the bankruptcy court to redetermine all the underlying facts." *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981). The Sixth Circuit has directed bankruptcy courts to apply collateral estoppel when "(1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issues, and (2) the issue was fully and fairly litigated in state court." *In re Markowitz*, 190 F.3d at 461. This directive controls even

with respect to true default judgments in those states which would give such judgments collateral estoppel effect. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 322 (6th Cir. 1997).

In the case at hand, the judgment was entered by a state court in Virginia. Thus, Virginia law regarding collateral estoppel applies. Under Virginia law, a party asserting collateral estoppel must satisfy five requirements:

> (1) the parties to the two proceedings must be the same or in privity; (2) the prior proceeding must have resulted in a valid and final judgment against the party against whom preclusion is sought or his privy; (3) the factual issue to be precluded must have been actually litigated in the prior proceeding; (4) the factual issue to be precluded must have been essential to the judgment in the prior proceeding; and (5) there must be mutuality, "that is, a party is generally prevented from invoking the preclusive force of a judgment unless that party would have been bound had the prior litigation of the issue reached the opposite result."

*Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006) (quoting *TransDulles Center, Inc. v. Sharma*, 472 S.E.2d 274, 275 (Va. 1996)). Inherent in this five-factor list is the principle that "[a]n issue is subject to collateral estoppel only if it is *identical* to an issue decided in a prior proceeding." *Id.* (emphasis in original) (citing *Angstadt v. Atlantic Mut. Ins. Co.*, 457 S.E.2d 86, 87-88 (Va. 1995); *Sevachko v. Commonwealth*, 529 S.E.2d 803, 804 (Va. App. 2000)). Further, in Virginia, the fact that the judgment was by default does not preclude a finding that the issue was actually litigated. *See TransDulles*, 472 S.E.2d at 276 (concluding that "Virginia law does not support a blanket exemption from the application of collateral estoppel in the case of a default judgment," and applying collateral estoppel where the defendant had failed to appear but testimonial and documentary evidence was presented *ex parte*); *In re Ansari*, 113 F.3d 17, 23 (4th Cir. 1997) (affirming the bankruptcy court's determination that the default judgment entered by a Virginia state court was entitled to collateral estoppel effect).

In this case, the Debtor does not dispute that three of the required five elements for collateral estoppel are satisfied, that the parties are the same in both proceedings, that a final judgment was entered against the Debtor in the state court action, and that mutuality exists. The Debtor denies however, that the remaining two requirements, the factual issues to be precluded were actually litigated and were essential to the judgment, are present. In order to resolve this dispute, the court must examine the issues raised in this nondischargeability action and compare them with the issues in the state court action. If the issues pled therein are identical to the ones herein and those issues

5

were actually litigated in the state court and necessary to its judgment, then collateral estoppel would preclude relitigation of those issues in this court.  *See In re Duncan*, 448 F.3d at 728.

The court turns first to the Plaintiffs' contention that their state court judgment against the Debtor establishes larceny and/or embezzlement under § 523(a)(4).  For purposes of this provision, larceny is the "felonious taking of another's personal property with intent to convert it or deprive the owner of same."  4 *Collier on Bankruptcy* ¶ 523.10 [2] (16th ed. 2012) (quoting *Smith v. Williams (In re Smith)*, 253 F.3d 703, *2 (5th Cir. 2001) (table opin.); *Clarendon Nat'l Ins. Co. v. Barrett (In re Barrett)*, 156 B.R. 529, 533 n.3 (Bankr. N.D. Tex.1993)); *see also Davis v. Kindrick (In re Kindrick)*, 213 B.R. 504, 509 (Bankr. N.D. Ohio 1997) ("Larceny can be defined as the actual or constructive taking away of property of another without the consent and against the will of the owner or possessor with the intent to convert the property to the use of someone other than the owner.").  Similarly, embezzlement under § 523(a)(4) is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (quoting *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982)).  Both larceny and embezzlement under § 523(a)(4) require an element of fraudulent intent.  *Dorado v. Dorado ( In re Dorado)*, 400 B.R. 304, 309 (Bankr. D. N.M. 2008).  The critical distinction between the two is that with regard to an embezzlement the original taking of the property was lawful or with the consent of the owner, while with larceny the felonious intent existed at the time of the taking.  4 *Collier on Bankruptcy* ¶ 523.10[2]. The intent required under this provision is "fraud in fact, involving moral turpitude or intentional wrong."  *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116-17 (B.A.P. 6th Cir. 2007) (citing *Driggs v. Black (In re Black)*, 787 F. 2d 503, 507 (10th Cir. 1986)). It may be established by circumstances demonstrating an intent to permanently deprive another of his property.  *Id*. at 117 (citing *Fischer Investment Capital, Inc. v. Cohen (In re Cohen)*, 334 B.R. 392, 400 n.7 (Bankr. N.D. Ill. 2005)).

In the case at hand, the Plaintiffs alleged in their state court complaint that the Debtor converted their building materials and property to use them in a "spec house" or in his other construction projects without giving the Plaintiffs proper credit such that theft occurred.  Under Virginia law, "conversion requires proof of a 'wrongful exercise or assumption of authority over

6

another's goods, depriving him of their possession.'" *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 171 (Va. 2011) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (1956)).  This definition includes negligent conduct, *see id.*, and, consequently, differs from larceny and embezzlement under § 523(a)(4) because it lacks an intent component.  *See Foreign Affairs Serv., Inc. v. Pittman (In re Pittman)*, 442 B.R. 485, 492 (Bankr. W.D. Va. 2010) (citing *Maine v. Adams*, 672 S.E.2d 862, 869 (2009)).  Thus, conversion alone under Virginia law would not be identical to either larceny or embezzlement under § 523(a)(4).

However, the Plaintiffs supplied this critical fraudulent intent component by consistently alleging in their state court complaint that the Debtor "knowingly and intentionally," and "intentionally, deliberately and wrongfully" converted their property, and that the conversion amounted to "theft." Courts have generally viewed theft as synonymous with larceny for purposes of § 523(a)(4).  *See, e.g., Martin v. Hauck (In re Hauck),* 466 B.R. 151, 166 (Bankr. D. Colo. 2012); *Baytherm Insulation, Inc., v. Carlson (In re Carlson),* 456 B.R. 391, 400 (Bankr. E. D. Wis. 2011); *Morganroth & Morganroth, PLLC v. Stollman (In re Stollman)*, 404 B.R. 244, 271 (Bankr. E.D. Mich. 2009); *see also Black's Law Dictionary* (9th ed. 2009) (defining theft as the "[t]he felonious taking and removing of another's personal property with the intent of depriving the true owner of it; larceny").  And, although it is not clear from the state court complaint whether the Debtor's initial possession of the Plaintiffs' property was lawful or consensual, and consequently, whether his intentional conversion was embezzlement rather than larceny, this distinction is largely irrelevant, given that a finding of either would be sufficient to establish nondischargeability for purposes of § 523(a)(4). *See First Nat'l Bank of Boston v. Overmyer (In re Overmyer)*, 52 B.R. 111, 120 (Bankr. S.D.N.Y. 1985) (knowing and willful conversion of funds is nondischargeable under § 523(a)(4)).  Accordingly, the identical issue sought to be precluded in this action was raised in the state court complaint.

Additionally, the § 523(a)(4) issues were actually litigated in the state court action for collateral estoppel purposes.  As noted, a knowing and intentional conversion, a theft, was alleged in the complaint, and a default judgment was entered.  The default judgment operated as "an admission of the truth of all material allegations set forth in the complaint or declaration."  46 Am.

Jur. 2d *Judgments* § 305 (2012); *see also TransDulles*, 472 S.E.2d at 276 ("a final default judgment imports absolute verity, and is as effectual and binding as if pronounced upon a trial upon the merits"); *Funkhouser v. Million*, 161 S.E.2d 725, 729 (Va. 1968) (failure of defendant to respond to plaintiff's motion for default judgment was an admission that plaintiff was entitled to damages and an acknowledgment by defendant of negligence charged against him; only issue before court was amount of damages); Va. Sup. Ct. Rule 3:19(c) (Upon the failure of a defendant to timely file a responsive pleading, "the court shall, on motion of the plaintiff, enter judgment for the relief appearing to the court to be due. . . . If the relief demanded is unliquidated damages, the court shall hear evidence to determine the amount of damages and fix the amount thereof . . . .").

The final component of the collateral estoppel doctrine is whether the issue sought to be precluded was essential to the state court judgment. As previously noted, the state court order itself only recited that the Debtor "converted property of the plaintiffs," and there was no express statement that the Debtor did so fraudulently or intentionally. To address this deficiency, the Plaintiffs point to the fact that the state court also awarded punitive damages. According to the Plaintiffs, the punitive damages award implicitly establishes the intent element of § 523(a)(4) because "Virginia law requires a showing of actual malice for an award of punitive damages for wrongful conversion," citing *Peacock Buick, Inc. v. Durkin*, 277 S.E.2d. 2d 225, 227 (1981). In response, the Debtor argues that the punitive damages award is not determinative because punitive damages may be awarded under Virginia law not only for malice, but also for "such recklessness or negligence as to evince a conscious disregard of the rights of others." *See Condo. Servs.*, 709 S.E.2d at 171; *see also Booth v. Robertson*, 374 S.E.2d 1, 3 (Va. 1988) (punitive damages are allowable not only by malicious conduct, but also by "negligence which is so willful or wanton as to evince a conscious disregard of the rights of others").

While the Debtor is correct in his statement of Virginia law, his conclusion drawn therefrom is not. The Supreme Court of Virginia has explained that the negligence which is an alternative basis for an award of punitive damages is a misnomer because it does not mean inadvertent neglect of a duty, ordinary negligence or even gross negligence. *Infant C. v. Boy Scouts of America, Inc.*, 391 S.E.2d 322, 327 (Va. 1990). Rather, "[t]he hallmark of this species of tortious conduct is the defendant's consciousness of his act, his awareness of the dangers or probable consequences, and

his reckless decision to proceed notwithstanding that awareness." *Id.* "An actor guilty of willful and wanton conduct intends his act . . . ." *Id.* at 328.  Consistent with this understanding, bankruptcy courts in Virginia have concluded that a state court award of punitive damages satisfies § 523(a)(4)'s intent requirement.    *See In re Pittman*, 442 B.R. at 493 (Virginia state court judgment for conversion and punitive damages nondischargeable as a matter of law under § 523(a)(4)); *In re Bane*, 236 B.R. 352, 354 (Bankr. W.D. Va. 1999) (an award of punitive damages for conversion precludes litigation of larceny under § 523(a)(4)).  This court agrees.  Accordingly, the Debtor is precluded by the doctrine of collateral estoppel from relitigating whether his judgment debt to the Plaintiffs for conversion and punitive damages for that conversion is nondischargeable under § 523(a)(4).

Having reached this conclusion, it is unnecessary to address whether the Plaintiffs are also entitled to summary judgment on the issue of nondischargeability under § 523(a)(6), which excepts from discharge debts "for willful and malicious injury by the debtor to another entity or the property of another entity."  11 U.S.C. § 523(a)(6).  Nonetheless, the court concludes that collateral estoppel does not bar relitigation of this issue.  "[T]he mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6)."  *In re Duncan*, 448 F.3d at 729.  Nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998).  In the case at hand, there was no allegation in the state court complaint that the Debtor acted with the actual intent to cause injury to the Plaintiffs.  Nor does the request for, and the award of, punitive damages supply the critical "intent to injure" element of § 523(a)(6).  As previously discussed, punitive damages may be awarded in Virginia not only for malicious conduct but also for "such recklessness or negligence as evinces a conscious disregard of the rights of others."  *Condo. Servs.*, 709 S.E.2d at 171.  The latter phrase means that the actor "intends his act, but not the resulting harm."  *Infant C.*, 391 S.E.2d at 328.  In light of this meaning, it can not be said that the issue of a willful and malicious injury, as defined by the Supreme Court, was raised, actually litigated, and essential to the Virginia state court judgment for conversion and punitive damages.  Courts faced with this question have agreed.  *See In re Pittman*, 442 B.R. at 493; *Kim v. Kim (In re Kim)*, No. 08-1126, 2008 WL 2705082, *4 (Bankr. E.D. Va. July 9, 2008); *see also In re Duncan*, 448 F.3d at 728 (Virginia state court judgment for wrongful death and punitive damages did not

9

preclude § 523(a)(6) dischargeability determination).

This court's conclusion that the Debtor is precluded from relitigating under § 523(a)(4) the dischargeability of the Plaintiffs' judgment debt against him for conversion and related punitive damages does not end the inquiry at hand because the parties dispute the amount of the judgment debt and the punitive damages that are attributable to Plaintiffs' conversion claim.  As previously noted, the final judgment order fails to specify the amount of conversion damages alone and the punitive damages award for that conversion.  Rather, the order sets forth one amount, $147,000, as the total compensatory damages and one amount, $100,000, for the total punitive damages award, and indicates that the two awards are for two different legal theories, fraud and conversion.

According to the state court's handwritten notes from the March 25, 2011 hearing on damages, Mr. Dean testified that his residence had appraised at $137,000 less than what it would have if it had been properly constructed, and he estimated that the value of the items he and his wife purchased for the residence but which the Debtor did not use or return for credit was between $10,000 and $20,000.  Additionally, the last section of the two pages of notes list the following in column form:

> diminution to value (less than repair cost)
> $137,000
> theft loss
> $10,000
> punitive damages
> $100,000
>
> MB to prepare order

The Plaintiffs assert that these notes establish the court's conclusion that $10,000 of the $147,000 compensatory damages award was for Plaintiffs' conversion claim.  The Debtor refuses to concede this point although he inconsistently admits that $137,000 of the $147,000 award was for diminution in value of the Plaintiffs' property.  The Debtor argues that the reference to "theft loss $10,000" in the notes could simply have been the court's notes from closing argument or a witness' testimony.

In making this argument, the Debtor does not deny that resort to extrinsic evidence is proper to clarify the state court ruling.  Indeed, as articulated in the Restatement (Second) of Judgments,

"[i]f it cannot be determined from the pleadings and other materials of record in the prior action what issues, if any, were litigated and determined by the verdict and judgment, extrinsic evidence is admissible to aid in such a determination." Restatement (Second) of Judgments § 27 cmt. f (2012). *See also Watergate at Landmark Condo. Unit Owners Ass'n v. Wauben (In re Wauben)*, 121 F.3d 702 (4th Cir. 1997) (table opin.) (citing Restatement comment in applying Virginia law). From the extrinsic evidence in this case in conjunction with the final order, the court concludes that the state court set the conversion loss at $10,000. The notes indicate that the court heard testimony that the value of the property converted was $10,000 to $20,000. And the listing of the different damages amounts at the end of the notes just before the initials of the Plaintiffs' attorney who was to prepare the final order suggests that the listed amounts were the court's ruling. While there is no way at this point to know for certain whether this was the case or whether the amounts were simply a witness's statement or closing argument, the question is irrelevant. Regardless of the answer, the state court undeniably adopted the $10,000 and $137,000 amounts by awarding the $147,000 total in the final order.

As to the amount of punitive damages that is excepted from discharge, the court agrees with the Plaintiffs' position that the entire $100,000 award is attributable to the Debtor's conversion. Under Virginia law, a court has "no power to adjudicate issues which are not presented by the parties in their pleadings unless the parties voluntarily try an issue beyond the pleadings." *Landcraft Co. v. Kincaid*, 263 S.E.2d 419, 422 (Va. 1980). Similarly, under Fed. R. Civ. P. 54(c), a default judgment may not differ in kind from, or exceed in amount, what is demanded in the pleadings. "The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend time, effort, and money necessary to defend the action." 10 Fed. Prac. & Proc. § 2663 (3d ed. 2012). In the present case, the Debtor was placed on notice that the Plaintiffs were seeking $100,000 in punitive damages for their conversion claim. That is what the state court awarded. To the extent that the court indicated that the award was for fraud, a claim not pled by the Plaintiffs, the finding is of no avail. *See id.* ("A judgment in a default case that awards relief that either is more than or different in kind from that requested originally is null and void."); *Landcraft Co.*, 263 S.E.2d at 422 ("a judgment beyond the issue is not merely irregular, it is extrajudicial and invalid").

III.

Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Federal Rules of Bankruptcy Procedure 7056, provides that a party may move for summary judgment on any claim or defense, and that the court shall grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." In the present case, there is no genuine dispute as to any material fact, and Plaintiffs as a matter of law are entitled to a determination that $110,000 of the state court judgment held by them against the Debtor is nondischargeable under § 523(a)(4) based on the doctrine of collateral estoppel. Accordingly, the Plaintiffs will be granted summary judgment on this issue. To the extent that the Plaintiffs seek summary judgment on their § 523(a)(6) claim, their motion will be denied.

# # #